1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
2

3      UNITED STATES OF AMERICA,            )
                                            )
4                  Plaintiff               )
                                            )
5           -VS-                            )  No. 20-MJ-02158-MBB-1
                                            )  Pages 1 - 17
6      CHARLES LIEBER,                      )
                                            )
7                  Defendant               )

8                         **PRELIMINARY EXAMINATION**

9                          **DETENTION HEARING**

10

            BEFORE THE HONORABLE MARIANNE B. BOWLER
11               UNITED STATES MAGISTRATE JUDGE

12

13   A P P E A R A N C E S :

14       JASON A. CASEY, ESQ. and BENJAMIN P. TOLKOFF, ESQ.,
     Assistant United States Attorneys, Office of the United States
15   Attorney, 1 Courthouse Way, Room 9200, Boston, Massachusetts,
     02210, for the Plaintiff.
16

17       PETER E. GELHAAR, ESQ. and PETER K. LEVITT, ESQ.,
     Donnelly, Conroy & Gelhaar, LLP, Suite 1600, 260 Franklin
     Street, Boston, Massachusetts, 02110, for the Defendant.
18
                                    United States District Court
19                                  1 Courthouse Way, Courtroom 19
                                    Boston, Massachusetts  02210
20                                  January 30, 2020, 12:07 p.m.

21

22
                             LEE A. MARZILLI
23                         OFFICIAL COURT REPORTER
                        United States District Court
24                       1 Courthouse Way, Room 7200
                             Boston, MA  02210
25                            (617)345-6787

1                    P R O C E E D I N G S

2          THE COURT:  Good morning.  Please be seated.

3          THE CLERK:  The United States District Court for the

4   District of Massachusetts is now in session, the Honorable

5   Marianne B. Bowler presiding.  Today is January the 30th, 2020.

6   The case of United States v. Lieber, Magistrate Judge

7   Action 20-02158, will now be heard.

8          Will counsel please identify themselves for the

9   record.

10          MR. CASEY:  Good afternoon, your Honor.  Jason Casey

11   for the United States.

12          MR. TOLKOFF:  Your Honor, good afternoon.  Ben Tolkoff

13   for the United States.

14          THE COURT:  Thank you.

15          MR. LEVITT:  Peter Levitt and Peter Gelhaar for

16   Mr. Charles Lieber.  Good afternoon, your Honor.

17          THE COURT:  Good afternoon.  Well, it's my

18   understanding we're here for the purposes of detention and

19   probable cause.  Is the government ready to proceed?

20          MR. TOLKOFF:  Your Honor, we are.  Your Honor, I think

21   the parties are in agreement as to conditions of release with

22   some fairly minor differences.  The parties are in agreement

23   that Mr. Lieber is releasable.  We are asking for a

24   $1.5 million bond.  The bond is one that we would ask be

25   secured on Mr. Lieber's residence; that is, 27 Hayes Avenue in

1    Lexington.  Our understanding is, the property is worth roughly

2    $1.6 million.  We understand that --

3            THE COURT:  Is that based on the assessed value?

4            MR. TOLKOFF:  It's a rough assessment, yes, your

5    Honor.

6            THE COURT:  And it's unencumbered?

7            MR. TOLKOFF:  Your Honor, we believe that it is

8    unencumbered.  However, there is a possibility that Mr. Lieber's

9    employer has some interest in the property, and so what we

10   would ask is that the bond of $1.5 million be secured by

11   Mr. Lieber's interest in that property and that any remainder

12   be a promise bond.  And so that if it turns out Mr. Lieber's

13   interest is in fact below the full value of the house, the

14   difference between the full value of the house and his interest

15   be a promise bond.

16           THE COURT:  And is it owned by joint tenancy with his

17   wife?

18           MR. TOLKOFF:  I believe it is, your Honor, yes.

19           THE COURT:  And is she present in the courtroom?

20           MR. LEVITT:  She's not, your Honor.

21           THE COURT:  Well, I certainly have to have it from her

22   on the record that she agrees.

23           MR. LEVITT:  I mean, I can represent to you that I've

24   spoken with her about it, and she agrees.

25           THE COURT:  No.  That's something I like to inquire

1    about.

2           MR. LEVITT:  We could arrange to have her available by

3    phone, your Honor.

4           THE COURT:  Well, I would expect her to be here.  She

5    has to sign.

6           MR. LEVITT:  We talked about dealing with the

7    paperwork next week with respect to this when we spoke with the

8    government and Probation.

9           THE COURT:  Well, I'll hear you on the remaining

10   conditions.

11          MR. TOLKOFF:  And, your Honor, the remaining

12   conditions are, first, that Mr. Lieber not leave the district

13   without approval of Pretrial Services; that he surrender any

14   travel documents, if he has not already; that he not travel by

15   air absent approval of the Court.  We are also asking --

16          THE COURT:  Well, if he's not going to travel outside

17   of Massachusetts, he shouldn't need to travel by air, period.

18          MR. TOLKOFF:  Yes, your Honor, I understand.  My point

19   is that I don't think the Court needs to be bothered every time

20   Mr. Lieber might want to go to Providence, for instance, for

21   work.  However, if Mr. Lieber plans to get on an aircraft, I

22   think that that is something that should be decided by your

23   Honor.

24          THE COURT:  Well, is he working?

25          MR. TOLKOFF:  Your Honor, I don't know exactly what

1   his status is with Harvard.

2          MR. LEVITT:  He's on leave, your Honor.

3          THE COURT:  All right, I say travel is restricted to

4   the District of Massachusetts.

5          MR. TOLKOFF:  Understood, your Honor.

6          THE COURT:  You moved for risk of flight, so...

7          What else?

8          MR. TOLKOFF:  Your Honor, because there is a financial

9   aspect to the facts underlying the charges, we would ask that

10  Mr. Lieber and his wife disclose any foreign bank accounts in

11  which they have an interest.

12         We are also asking that Mr. Lieber's wife surrender

13  her passport.  As the Court knows from having reviewed the

14  affidavit in this case, there was a significant amount of money

15  paid to Mr. Lieber by a foreign country, and part of that money

16  was paid in cash.  So our concern is that if Ms. Lieber wanted

17  to, she could potentially take some of the proceeds of those

18  payments and move them to another country, in the event that

19  she were to retain her passport for the pendency of the case,

20  so we would ask that that be surrendered as well.

21         THE COURT:  Anything else?

22         MR. TOLKOFF:  Your Honor, we're asking that

23  Mr. Lieber, because he is a person of some means and his wife

24  is a person of some means, that they not make any significant

25  withdrawals.  We understand they have lives, they have

1    expenses.  And so I think the parties have spoken, and we would

2    tentatively set the significant dollar amount at $5,000, and

3    that no withdrawals from any of their accounts be made in that

4    amount or above absent approval by Pretrial; and that if

5    Ms. Lieber or Mr. Lieber have any interest in safe deposit

6    boxes, that those not be accessed or anything taken from them

7    absent approval by Pretrial.

8              THE COURT:  Well, that has been noted in the Pretrial

9    Services Report.

10             MR. TOLKOFF:  And then, finally, your Honor, the

11   government would ask, because there is involvement with Chinese

12   academic entities, that there be no contact with members of

13   Wuhan University, Peking University, or the Chinese Academy of

14   Sciences.  I understand members of those organizations may

15   reach out to Mr. Lieber.  Of course, he can't control that, but

16   he can control his own actions, and we would ask that he be

17   ordered to refrain from responding.

18             THE COURT:  Anything else?

19             MR. TOLKOFF:  Nothing else from the government.  Thank

20   you, your Honor.

21             THE COURT:  All right.  I'll hear the defense on the

22   conditions.

23             MR. LEVITT:  Those conditions are acceptable, your

24   Honor.

25             With respect to both the disclosing of any foreign

1  bank accounts and the surrender of the passport, I spoke with

2  Mr. Tolkoff and Mr. Casey about that, and we agreed that we

3  could do that at a later date.  We can set a date certain next

4  week, mid- --

5          THE COURT:  You are willing to disclose foreign bank

6  accounts?

7          MR. LEVITT:  We are willing to do that and to

8  surrender his wife's passport, if that's required, but we would

9  ask that we set a date to do that next week.

10         THE COURT:  And, again, she's not here today.

11         MR. LEVITT:  But, as I said, we agreed previously with

12  the prosecutors that we could do that next week, that we could

13  provide them with a copy of --

14         THE COURT:  But I have to question her.

15         MR. LEVITT:  Well, your Honor, I mean, what I would --

16  you have to question her with respect to the house?

17         THE COURT:  Well, certainly with the bond, and I have

18  to warn her that violation of any conditions have a penalty.

19         MR. LEVITT:  We can make her available by phone, or I

20  can call her right now and have her come in.

21         THE COURT:  I'll have her brought in today.  Can we

22  suspend until -- what time, Mr. Putnam?

23         THE CLERK:  Three o'clock.

24         THE COURT:  Three o'clock, and she should be prepared

25  to bring the passport with her.

1          I'm surprised you haven't done a title search on the

2   property, so, I mean, I'd like to know what the encumbrances

3   are.

4          MR. TOLKOFF:  Yes, your Honor.

5          THE COURT:  Well, why haven't you?  You've had a

6   couple of days.

7          MR. TOLKOFF:  Your Honor, these were conditions that

8   were discussed just yesterday with Mr. Levitt, but we will be

9   prepared to answer the Court's questions along those lines at

10  3:00 o'clock today.

11         THE COURT:  Surely your client knows how it's

12  encumbered, Mr. Levitt, and what the equity approximately is.

13         MR. LEVITT:  There's no mortgage on the home.  We

14  believe that his employer has a one-third interest in the home,

15  but the home was purchased quite a long time ago, and we have

16  not yet identified the paperwork for that.  So we believe it's

17  a one-third interest in the home.

18         THE COURT:  Well, we need some documentation of that.

19         MR. LEVITT:  That's one of the reasons why we had

20  discussed with the prosecutors to have a date certain next

21  week --

22         THE COURT:  And we need to confirm that they -- I

23  would say, if there's a third interest, I mean, are they owners

24  of record?  Is it a mortgage?  What's the term?

25         MR. LEVITT:  They are the owners of record.  I don't

1    believe it's a mortgage.  I believe that they took a one-third --

2    they helped them, that the employer helped them purchase the

3    property many, many years ago by providing some of the down

4    payment and took an interest in the property.

5            THE COURT:  So it's not perhaps ownership by tenants

6    by the entirety.

7            MR. LEVITT:  I believe they are the owners of record

8    of the home.

9            THE COURT:  Well, it's not clear.  And it seems to me

10   your client is a highly educated and sophisticated individual.

11   He should be able to discuss this with you and let you know

12   exactly what the arrangement is.  I'd like to know that before

13   I post the conditions this afternoon.

14           So is this courtroom available this afternoon?  Yes,

15   all right, so we'll resume here at 3:00 o'clock.  Please have

16   as many specifics as possible.

17           MR. TOLKOFF:  Yes, your Honor.

18           THE COURT:  All right, we stand in recess.

19           THE CLERK:  All rise.

20           (A recess was taken, 12:17 p.m.)

21           (Resumed, 3:15 p.m.)

22           THE COURT:  Please be seated.

23           THE CLERK:  United States District Court for the

24   District of Massachusetts is now in session, the

25   Honorable Marianne B. Bowler presiding.  Today is January 30,

1  2020, the case of the United States v. Charles Lieber,

2  Magistrate Judge Action 20-02158, resuming on the record.

3       Will counsel please reidentify themselves for the

4  record.

5       MR. CASEY:  Good afternoon, your Honor.  Jason Casey

6  for the United States.

7       THE COURT:  Thank you.

8       MR. TOLKOFF:  Your Honor, Ben Tolkoff for the United

9  States.

10      THE COURT:  Thank you very much.

11      MR. LEVITT:  Peter Levitt and Peter Gelhaar for

12  Charles Lieber.

13      THE COURT:  Thank you very much.

14      Counsel, I apologize for the delay.  I was tied up in

15  another courtroom with another criminal matter.

16      All right, I have given considerable thought to the

17  proposed conditions, and I have reviewed things with Pretrial

18  Services.  I'm going to set bail in the amount of a $1 million

19  cash bond.  I will give the defendant five business days to

20  post the entirety of the bond.

21      Having reviewed the defendant's financial assets, as

22  set forth in the Pretrial Services report, I'm comfortable that

23  the bond can be met and can be fulfilled within a matter of

24  days.  The bond is to be cosigned by the defendant's wife.  Is

25  she present in the courtroom at this time?

1        MR. LEVITT:  Yes, your Honor.

2        THE COURT:  All right, would you please stand and

3   identify yourself, your name for the record.

4        MS. LIEBER:  I'm Jennifer Lieber.

5        THE COURT:  All right.  Do you understand that by

6   cosigning the bond, that you would be liable for the entire

7   amount of the bond if your husband failed to appear for any

8   court appearance that he's required to attend?

9        MS. LIEBER:  Yes.

10        THE COURT:  And do you do this willingly, freely, and

11   voluntarily?

12        MS. LIEBER:  Yes.

13        THE COURT:  All right.  I decided not to accept the

14   property in Lexington as collateral for the bond because I

15   think Harvard's ownership interest in the property complicates

16   the ability to encumber this property.

17        Now, it was my understanding, having talked to

18   Pretrial Services, that the defendant's wife came here today

19   with a check in the amount of $500,000.  Is that correct?

20        MR. LEVITT:  No, your Honor.  It's a check in the

21   amount of $50,000 based on a request by the government for a

22   surety bond in the amount of $500,000, and 10 percent of that

23   is what would be required.

24        THE COURT:  Well, I'm requiring the $1 million in

25   cash, five days to put it together.

1          I would ask the defendant to stand at this time.  I'm

2     going to impose the additional conditions of release.

3          The defendant is to report to Pretrial Services and

4     Probation as directed.  The defendant is to maintain his

5     residence in Lexington, and his travel is restricted to the

6     District of Massachusetts.  The defendant is to surrender his

7     passport to Pretrial Services.  Now, I understand it's in the

8     custody of the agents?

9          MR. TOLKOFF:  That's correct, your Honor.

10          THE COURT:  All right, so it should be delivered to

11     Pretrial Services.  And, as directed, not to apply for a new

12     passport or any other travel document.  The defendant's wife is

13     to surrender her passport to Pretrial Services, and she too is

14     directed not to apply for a new passport or any other travel

15     document.

16          Did you bring your passport to court today?

17          MS. LIEBER:  I did.

18          THE COURT:  All right, so that will be turned over at

19     the conclusion of this proceeding.

20          The defendant is to avoid all contact, directly or

21     indirectly -- that includes any kind of electronic

22     communication -- with any person who may be a victim or

23     potential witness in this case.  The defendant is to have no

24     contact, directly or indirectly, again electronically or

25     including through any third party, with Wuhan University --

1          You referred to it as Peking University, Mr. Tolkoff?

2          MR. TOLKOFF:  Yes, your Honor.

3          THE COURT:  It's not Beijing?  It's Peking?

4          MR. TOLKOFF:  That is my understanding, yes, your

5     Honor.

6          THE COURT:  All right -- or the Chinese Academy of

7     Science.

8          The defendant must seek permission from Pretrial

9     Services to authorize the withdrawal of funds in excess of

10    $20,000 from any financial account, safe deposit box, or other

11    repository of funds.  In the case of accounts which are held

12    jointly, this applies to the defendant's wife as well.

13         The defendant is to disclose exclusively to Pretrial

14    Services by the close of business tomorrow any foreign bank

15    accounts.  The defendant is to report any contact with law

16    enforcement to Pretrial Services within 24 hours.  And the

17    defendant shall refrain from the possession of any firearms,

18    ammunition, destructive devices, or dangerous weapons.

19         I remind you, Mr. Lieber, that violation of any of the

20    foregoing conditions of release that I have set today may

21    result in the immediate issuance of a warrant for your arrest,

22    a revocation of release, and an order of detention, as provided

23    for in 18 United States Code, Section 3148, and a prosecution

24    for contempt, as provided for in 18 United States Code,

25    Section 401.  This could result in a possible term of

1    imprisonment and/or a fine.  If you are arrested while you are

2    on release, you are to notify Pretrial Services within 24 hours

3    of bail.

4          I'm now going to tell you about the statutory

5    conditions of bail.  I ask you to listen carefully and to

6    review them with your counsel at the conclusion of this

7    proceeding.

8          While you are on release, you are prohibited from

9    committing a federal, state, or local crime.  If you fail to

10   appear before the Court as required by the conditions of

11   release -- in other words, if you're found guilty of bail

12   jumping -- you shall be subject to a fine of up to $250,000

13   and/or ten years in jail.  Any term of imprisonment shall be a

14   consecutive sentence to the sentence of imprisonment for the

15   underlying offense.  In addition, a failure to appear would

16   result in the immediate forfeiture of the $1 million cash bond.

17         I remind you once again that if you violate any

18   condition of release that I have set today, I can immediately

19   issue a warrant for your arrest, and can under some

20   circumstances revoke your bail and detain you and commence a

21   prosecution for contempt, which could result in a possible term

22   of imprisonment and/or a fine.

23         If you are convicted of an offense while you are on

24   release, you may receive a term of imprisonment of not more

25   than ten years, if it is a felony, and a term of not less than

1   90 days or more than one year, if it is a misdemeanor.  The

2   term of imprisonment shall be consecutive and must be imposed

3   in addition to the sentence received for the offense itself.

4           Now, there are four other statutes that I'm going to

5   tell you about.  These involve obstruction of justice.

6           Under Section 1503, it is a federal felony, punishable

7   by up to five years in jail and a $250,000 fine, to threaten or

8   try to influence or intimidate any juror, court officer, or

9   witness, or to in any way impede or obstruct the administration

10  of justice.

11          Under Section 1510, it is a federal felony, punishable

12  by up to five years in jail and a $250,000 fine, to obstruct

13  criminal investigations by endeavoring by means of bribery to

14  obstruct, delay, or prevent the communication of information

15  relating to the violation of any federal criminal statute by

16  any person to a criminal investigator.

17          Under Section 1512, it is a federal felony, punishable

18  by up to ten years in jail and a $250,000 fine, to tamper with

19  a witness, a victim, or an informant.

20          And, finally, under Section 1513, it is a federal

21  felony, punishable by up to ten years in jail and a $250,000

22  fine, to retaliate against a victim, a witness, or an informant

23  by causing bodily injury or property damage, or even

24  threatening to do so.  If I find that there's probable cause to

25  believe that you have committed any one of these offenses after

1  a hearing, I could issue a warrant and detain you.

2          Do you understand everything I've said here today?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  It's my understanding that probable cause

5  is being waived?

6          MR. LEVITT:  That's correct, your Honor.

7          THE COURT:  All right, so the court note will reflect

8  that probable cause is waived.

9          Anything else, Counsel?

10          MR. GELHAAR:  May I have a brief moment to confer,

11  your Honor?

12          THE COURT:  Certainly.

13          (Discussion between defense counsel and the defendant.)

14          MR. LEVITT:  Thank you, your Honor.  Your Honor, we

15  just wanted to confirm that it was five business days?

16          THE COURT:  Five business days.  It will be the close

17  of business next Thursday.

18          MR. LEVITT:  Mr. Lieber anticipates getting emails,

19  receiving emails from people, and they could be on the

20  prohibited list, and he won't respond to those.  We just wanted

21  to make sure that the receipt of those emails is not --

22          THE COURT:  Well, obviously, unless he deletes his

23  email address, he cannot prohibit that.

24          All right, so I ask counsel to stay in the courtroom

25  until the bail papers are completed, at which time the

1   defendant will be remanded to the custody of the United States

2   Marshals to be released after processing.

3           I want to bring one matter to the attention in the

4   gallery.  It was brought to my attention that earlier in this

5   proceeding there was someone in the courtroom using a recorder.

6   That is prohibited, and I would hope that it would not happen

7   again.  I believe it's a member of the press.

8           All right, hearing nothing else?

9           MR. TOLKOFF:  No.  Thank you, your Honor.

10          THE COURT:  All right, we stand in recess.

11          MR. TOLKOFF:  Thank you, your Honor.

12          MR. CASEY:  Thank you, your Honor.

13          THE COURT:  We will wait to sign the bail papers.

14          THE CLERK:  Court is in recess.

15          (Adjourned, 3:27 p.m.)

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T E

2

3

UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON                 )

5

6

7        I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 17 inclusive, was recorded by me stenographically at

10   the time and place aforesaid in No. 20-MJ-02158-MBB-1, United

11   States of America v. Charles Lieber, and thereafter by me

12   reduced to typewriting and is a true and accurate record of the

13   proceedings.

14        Dated this 26th day of March, 2020.

15

16

17

18

19

20        /s/ Lee A. Marzilli
         _____
21        LEE A. MARZILLI, CRR
         OFFICIAL COURT REPORTER

22

23

24

25